REC'D:BANKRUPTCY:NJB
2026 NOV 12 PM1:45:19

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>FAST TRACK TRADING LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 25-10470 (MBK)<br>(Jointly Administered with<br>Case No. 24-22595 (MBK)) |
| JOHN MICHAEL McDONNELL,<br>Chapter 7 Trustee for the Estate of<br>Fast Track Trading LLC,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS TOMMARELLO,<br><br>Defendant. | Adv. Pro. No. 26-01516 (MBK) |

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND STATEMENT REGARDING CONSENT TO ENTRY OF FINAL ORDERS**

Defendant Nicholas Tommarello ("Defendant"), appearing pro se, answers the Complaint of John Michael McDonnell, Chapter 7 Trustee (the "Trustee"), as follows.

## STATEMENT REGARDING CONSENT (Fed. R. Bankr. P. 7012(b))

1. Defendant **does not consent** to the entry of final orders or judgment by the bankruptcy court in this adversary proceeding to the extent entry of such final orders or judgment is not permitted absent consent under 28 U.S.C. § 157(c)(2) and *Stern v. Marshall*, 564 U.S. 462 (2011). This statement is made pursuant to Fed. R. Bankr. P. 7012(b). Defendant will comply with applicable requirements for seeking a determination of the Court's authority and for objecting to proposed findings of fact and conclusions of law.

2. Defendant filed Proof of Claim No. 313 in Case No. 25-10470 on March 12, 2025, for $120,000.00. The claim concerns additional payouts that Defendant contends FTT approved and did not pay before it ceased operations in November 2024. Exhibit C contains the filed proof of

claim. Defendant denies that he filed any Proof of Claim No. 568 or any claim in the amount of $580.40, as alleged in paragraph 39 of the Complaint. Defendant will calendar and, within the time provided by D.N.J. LBR 7016-1(e), file the motion that rule requires to preserve his non-consent.

## PRELIMINARY STATEMENT

3. Fast Track Trading LLC ("FTT" or the "Debtor") sold a product. FTT's archived Terms and Conditions captured on September 25, 2024 stated: "By Clicking Agree, you are purchasing a product." The Terms stated that FTT acts "SOLELY as an education firm," that nothing FTT offered was "a solicitation, promotion, endorsement, offer, or recommendation to buy or sell any investment vehicle," that fees were subject to "NO REFUNDS," and, quoting CFTC Rule 4.41, that "the trades have not actually been executed." FTT published payout eligibility rules and per-account caps, including five-day and ten-day requirements described in Exhibit D.

4. Defendant was a retail customer residing in Dallas, Texas. He purchased simulated trading accounts from FTT for a total of $10,434.58 in four payments between August 8 and September 18, 2024. He traded those accounts under FTT's published rules. FTT approved and paid Defendant $18,500.00 on September 11, 2024 and $18,000.00 on October 16, 2024 through its payment processor, Rise. Defendant reported both payouts as income on his 2024 federal income tax return. Defendant was never an insider, officer, employee, equity holder, or affiliate of FTT, and had no knowledge of FTT's finances beyond what FTT published to all customers.

5. Defendant disputes that either payout is avoidable. He contends that the payouts arose from his performance under FTT's published rules and asserts the defenses stated below. The September 11, 2024 payment falls outside the 90-day preference period measured from either petition date. Defendant acknowledges that the October 16, 2024 payment falls within 90 days of the December 23, 2024 petition date alleged in the Complaint, but denies that the Trustee has established the requirements for avoidance.

## ANSWER TO THE NUMBERED PARAGRAPHS OF THE COMPLAINT

6. Defendant answers the Complaint's numbered paragraphs as follows. Paragraphs 1 through 84 of the Complaint are addressed by number range below; where a range is addressed, Defendant's response applies to each paragraph in the range according to its subject matter.

**Paragraphs 1–3 (jurisdiction, core proceeding, venue).** Paragraph 1: Admitted. Paragraph 2: Admitted in part; denied in part. Admitted that this is a proceeding referred under 28 U.S.C. § 157 and that the counts invoked are described as core in 28 U.S.C. § 157(b)(2)(F), (H), and (O). Denied that the bankruptcy court may enter final orders or judgment on all claims without

Defendant's consent, for the reasons stated in the Statement Regarding Consent above. Paragraph 3: Admitted that venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

**Paragraphs 4–5 (parties).** Paragraph 4: Admitted that Plaintiff is the Chapter 7 trustee in Case No. 25-10470. Defendant disputes any additional authority required to assert the claims through Case No. 24-22595 for the reasons stated in the Twelfth Defense. Paragraph 5: Admitted that Defendant is an individual residing at 5427 Ridgedale Avenue, Dallas, Texas 75206. Denied that Defendant was an investor in FTT.

**Paragraph 6 (participation and transfers).** Admitted in part. Admitted that Defendant participated in the Debtor's account program, purchased simulated trading accounts from the Debtor, and received two payments from the Debtor through Rise. Denied that Defendant received any "refunds" (all FTT fees were non-refundable by their terms). Denied any characterization of the payments received as anything other than performance payouts on Defendant's trading results under the Debtor's published rules.

**Paragraphs 7–11 (Trustee's characterization of the Debtor's business).** Defendant admits that FTT offered simulated trading accounts for fees and advertised performance-based payouts, including account programs called Rally, Daytona, GT, and Le Mans. Defendant purchased and used simulated trading accounts as a retail customer. Defendant lacks knowledge or information sufficient to form a belief about FTT's internal revenue sources, funding arrangements, or alleged fraudulent operations and therefore denies those allegations. Defendant denies that the payments he received are avoidable or that his claim is subject to disallowance on the grounds alleged. Except as expressly admitted, paragraphs 7 through 11 are denied.

**Paragraphs 12–13 (EisnerAmper investigation; revenue figures).** Defendant lacks knowledge or information sufficient to form a belief as to the scope and findings of the Trustee's investigation, and therefore denies those paragraphs, subject to discovery.

**Paragraphs 14–16 (funding and solvency allegations).** Denied. Defendant lacks knowledge or information sufficient to form a belief as to the Debtor's funding mechanics and solvency on any particular date, and therefore denies that the Debtor was insolvent on September 11, 2024 or October 16, 2024, or during the 90 days preceding December 23, 2024 or January 16, 2025. Defendant disputes the alleged financial conditions, subject to the statutory presumptions and burdens applicable to each count.

**Paragraphs 17–23 (commingling, insider diversion, withdrawal controls, "no pay" list, review-conditioned payouts).** Defendant lacks knowledge or information sufficient to form a belief about the allegations concerning FTT's internal funding, commingling, insider spending,

payout controls, and treatment of other customers, and therefore denies those allegations. Defendant filed Claim No. 313 for $120,000.00 based on his contention that FTT approved additional payouts and did not pay them. Defendant denies that the payments he received are avoidable or that he participated in any fraudulent scheme.

**Paragraphs 24–30 (bankruptcy filings and investigation).** Admitted that an involuntary petition was filed against the Debtor on December 23, 2024 (Case No. 24-22595); that an order for relief was entered January 29, 2025; that the Debtor filed a voluntary Chapter 7 petition on January 16, 2025 (Case No. 25-10470); and that the cases are jointly administered. Admitted that the docket identifies the March 12, 2025 order as an order granting joint administration, with Case No. 25-10470 as the lead case. Defendant does not admit that this docket designation alone determines the petition date applicable to the challenged transfers. Defendant lacks knowledge or information sufficient to form a belief as to the claims register total and the Trustee's transfer inventory, and therefore denies those paragraphs, subject to discovery.

**Paragraphs 31–34 (the Transfers; Customer Payments; Net Winnings).** Admitted in part. Admitted that Defendant paid the Debtor $10,434.58 in four payments dated August 8, August 15, August 30, and September 18, 2024, as set forth in Exhibit A to the Complaint and in Defendant's Exhibit A hereto. Admitted that the Debtor paid Defendant $18,500.00 on September 11, 2024 and $18,000.00 on October 16, 2024 through Rise, totaling $36,500.00, as set forth in Defendant's Exhibit B. Denied that the difference of $26,065.42 is a "Net Winnings" figure properly subject to avoidance, for the reasons stated in the Preliminary Statement and Affirmative Defenses below.

**Paragraph 35 (Count One theory).** Denied.

**Paragraph 36 (constructive fraud theory).** Denied.

**Paragraph 37 (preference theory).** Admitted in part: admitted that Exhibit B to the Complaint identifies a single payment of $18,000.00 on October 16, 2024 within the 90 days preceding December 23, 2024. Denied that this payment is avoidable under 11 U.S.C. § 547(b), for the reasons stated in the Affirmative Defenses below. Noted that the payment of $18,500.00 on September 11, 2024 falls outside the 90-day period measured from either petition date.

**Paragraph 38 (alternative theories).** Admitted that the Complaint pleads alternative theories subject to 11 U.S.C. § 550(d). Denied that any theory entitles the Trustee to recovery.

**Paragraph 39 (Proof of Claim No. 568).** Denied. Defendant did not file Proof of Claim No. 568 and did not file any claim in the amount of $580.40. The claims register of Case No. 25-10470 lists Claim No. 568 under a different creditor, a Fast Track Trading customer in Canada; the first

page of that creditor's filed proof of claim, identifying the creditor, is attached as Exhibit G hereto. Defendant admits only that he filed Proof of Claim No. 313 on March 12, 2025, for $120,000.00, as alleged in paragraph 81.

**Paragraphs 40–47 (Count One allegations).** Defendant admits receiving the two payments identified in Exhibit B within two years before either petition date. Defendant lacks knowledge or information sufficient to form a belief about FTT's internal funding arrangements or the intent of its management and therefore denies the allegations concerning those matters. Defendant denies that either payment was an avoidable fraudulent transfer and asserts the defenses stated below.

**Paragraphs 48–54 (Count Two allegations).** Denied that the Debtor received less than reasonably equivalent value for the payments to Defendant. Defendant contends that each payment discharged an enforceable payout obligation under FTT's published rules, which is value under 11 U.S.C. § 548(d)(2)(A). Defendant lacks knowledge or information sufficient to form a belief as to the Debtor's financial condition on September 11, 2024 or October 16, 2024 and therefore denies the allegations of insolvency, unreasonably small capital, and intent to incur debts beyond the Debtor's ability to pay, subject to the Trustee's burden of proof.

**Paragraphs 55–66 (Count Three allegations, including paragraphs 56–61).** Denied except as stated below. Paragraph 56: Admitted that § 544(b)(1) permits avoidance when its statutory requirements are met. Denied that the Trustee has established those requirements here. Paragraph 57 (existence of unsecured creditors at the relevant dates): Defendant lacks knowledge or information sufficient to form a belief as to whether unsecured creditors existed at the relevant dates, and therefore denies. Defendant denies that the Trustee has established the existence of an actual unsecured creditor holding a claim qualifying under 11 U.S.C. § 544(b)(1) who could avoid the transfers under the applicable New Jersey provision. For the claim under N.J.S.A. 25:2-27(a), Defendant also disputes that the required creditor held a claim arising before the challenged transfer. Paragraphs 58–59 (actual intent under New Jersey law): Denied for the reasons stated as to paragraphs 40 through 47 above. Paragraph 60 (avoidability under N.J.S.A. 25:2-25(a)): Denied. Paragraph 61: Denied. Defendant contends that the payments satisfied enforceable payout obligations and supplied reasonably equivalent value. Satisfaction of an antecedent debt is value under N.J.S.A. 25:2-24(a). Paragraphs 62–66: Denied.

**Paragraphs 67–74 (Count Four allegations).** Admitted in part. Admitted that the Complaint's Exhibit B identifies the October 16, 2024 payment of $18,000.00. Defendant contends that the October 16, 2024 payment satisfied an enforceable payout obligation under FTT's published rules. Defendant denies that the payment is avoidable under 11 U.S.C. § 547, asserts the ordinary-course defense stated in the Third Defense and the other defenses stated below, and disputes the

remaining requirements for preference avoidance as stated in this Answer. Defendant separately relies on satisfaction of that obligation as value in response to the fraudulent-transfer claims. Defendant lacks knowledge or information sufficient to form a belief about the Trustee's pre-suit investigation described in paragraph 73 and therefore denies that allegation.

**Paragraphs 75–79 (Count Five allegations).** Defendant admits receiving the two payments identified in Exhibit B and denies that the Trustee is entitled to recover either payment. Recovery under 11 U.S.C. § 550 depends on establishing avoidability and the applicable requirements for recovery. Defendant asserts the defenses and credits stated in this Answer and the single-satisfaction limitation in 11 U.S.C. § 550(d).

**Paragraphs 80–84 (Count Six allegations).** Defendant admits paragraph 81: he filed Claim No. 313 on March 12, 2025, for $120,000.00. Defendant admits that the Trustee seeks avoidance and recovery as alleged in paragraph 82, but denies liability. Defendant denies that the Trustee has established a basis to disallow Claim No. 313 under 11 U.S.C. § 502(d). Defendant did not file Claim No. 568 or a claim for $580.40. Except as expressly admitted, the allegations of paragraphs 80 through 84 are denied.

**General denial.** Any allegation of the Complaint not expressly admitted above is denied.

## AFFIRMATIVE DEFENSES

Defendant pleads the following defenses without assuming any burden of proof that the law places on the Trustee. Several are pleaded in the alternative because the Complaint invokes both 11 U.S.C. § 547 and § 548.

**FIRST DEFENSE. Failure to state a claim.** Defendant preserves the defense of failure to state a claim under Fed. R. Civ. P. 12(h)(2), made applicable by Fed. R. Bankr. P. 7012.

**SECOND DEFENSE. Applicable preference period (11 U.S.C. § 547(b)(4)).** The September 11, 2024 payment occurred 103 days before December 23, 2024 and 127 days before January 16, 2025. Defendant was not an insider, and that payment is outside either 90-day preference period. The October 16, 2024 payment occurred 68 days before December 23, 2024 and 92 days before January 16, 2025. Defendant acknowledges that the Complaint uses December 23, 2024 as the Petition Date. If January 16, 2025 governs Count Four, the October payment also falls outside the preference period. Defendant does not concede that the lead-case caption or joint administration alone determines the applicable petition date and otherwise relies on his defenses to the October payment.

**THIRD DEFENSE. Ordinary course of business (11 U.S.C. § 547(c)(2)).** Defendant asserts the ordinary-course defense under 11 U.S.C. § 547(c)(2). Defendant purchased simulated trading accounts, traded under FTT's published rules, and received the two payouts through Rise. Defendant contends that the payout obligations were incurred in the ordinary course of FTT's and Defendant's business or financial affairs and that the payments were made in their ordinary course. Alternatively, Defendant contends that the payments were made according to ordinary business terms. Defendant expects the Debtor's account and payout records, and evidence of relevant industry practice, to support these contentions when discovery is permitted. See Fiber Lite Corp. v. Molded Acoustical Prods., Inc. (In re Molded Acoustical Prods., Inc.), 18 F.3d 217 (3d Cir. 1994); Stanziale v. Southern Steel & Supply (In re Conex Holdings, LLC), 518 B.R. 269 (Bankr. D. Del. 2014).

**FOURTH DEFENSE. Solvency; the § 547(f) presumption.** Defendant disputes that FTT was insolvent on the date of any payment to Defendant and does not concede it. Defendant had no access to the Debtor's finances; the Debtor's ledger of approved payouts, its receivables, and its cash on hand on each transfer date are in the Trustee's possession, not Defendant's. Defendant recognizes that 11 U.S.C. § 547(f) creates a rebuttable presumption of insolvency during the applicable 90-day period. Defendant intends to seek the records needed to evaluate insolvency and present any evidence supporting rebuttal when discovery is permitted. The Trustee retains the ultimate burden under 11 U.S.C. § 547(g), subject to that presumption. Defendant requests valuation as of the relevant transfer date under the applicable legal standard. A going-concern valuation is appropriate unless liquidation was clearly imminent. See Travellers Int'l A.G. v. Trans World Airlines, Inc. (In re TWA), 134 F.3d 188 (3d Cir. 1998).

**FIFTH DEFENSE. Reasonably equivalent value (11 U.S.C. § 548(a)(1)(B)).** Defendant denies that FTT received less than reasonably equivalent value for either payment. Defendant contends that each payment discharged an enforceable payout obligation arising from his performance under FTT's published rules. Satisfaction of a valid present or antecedent debt is value under 11 U.S.C. § 548(d)(2)(A). To the extent each payment reduced that obligation dollar for dollar, Defendant contends that FTT received reasonably equivalent value. See Image Masters, Inc. v. Chase Home Fin., LLC, 489 B.R. 375 (E.D. Pa. 2013); Daly v. Deptula (In re Carrozzella & Richardson), 286 B.R. 480 (D. Conn. 2002); Lustig v. Weisz & Assocs. (In re Unified Commercial Capital, Inc.), 260 B.R. 343 (Bankr. W.D.N.Y. 2001), aff'd (W.D.N.Y. 2002). Defendant also paid FTT $10,434.58, as shown in Exhibit A. The Complaint itself alleges, as to the October 16, 2024 payment, that it was made "after the Debtor became obligated to make such payment" (¶ 69) and that Defendant "held a right to payment" (¶ 70). Defendant does not treat those alternative allegations as admissions, but they describe a payment on a debt. The existence and amount of the obligations discharged by the payments remain matters for proof.

**SIXTH DEFENSE. Disputed fraudulent purpose.** Defendant disputes the Trustee's characterization of FTT and the payments to Defendant as part of a Ponzi scheme. Defendant purchased simulated trading accounts and used the account program described in FTT's public terms. Defendant had no access to FTT's internal finances. Defendant denies that either payment is avoidable as a fraudulent transfer. If the Trustee relies on a presumption, Defendant disputes that its factual and legal requirements are satisfied and requires proof that it applies to the transfers at issue. See Stanziale v. Sutton (In re Dwek), Adv. No. 08-1015 (Bankr. D.N.J. Jan. 20, 2011) (existence, timing, and scope of a Ponzi scheme are fact questions); Zazzali v. AFA Fin. Grp. (In re DBSI, Inc.), 477 B.R. 504 (Bankr. D. Del. 2012). Defendant separately asserts his value and good-faith defenses.

**SEVENTH DEFENSE. Good-faith transferee for value (11 U.S.C. § 548(c); N.J.S.A. 25:2-30(a), (d)).** Defendant asserts that he received each payment in good faith and for value and may retain it to the extent protected by 11 U.S.C. § 548(c). For the state-law claims, Defendant asserts good faith and reasonably equivalent value under N.J.S.A. 25:2-30(a), and protection to the extent of value given under N.J.S.A. 25:2-30(d). Defendant was an arm's-length retail customer with no knowledge of FTT's finances beyond FTT's public communications; had no facts that would lead a reasonable person in his position to believe FTT was insolvent or that any payment to him was made for a fraudulent purpose; continued purchasing accounts from FTT after FTT announced its payout rule changes; and reported the payouts as taxable income. Defendant asserts that he acted in good faith based on the information available to him when each payment was received. The inquiry includes what a reasonable transferee in his position knew or should have known and whether the circumstances required further inquiry. See Image Masters, Inc. v. Chase Home Fin., LLC, 489 B.R. 375 (E.D. Pa. 2013).

**EIGHTH DEFENSE. Netting; limitation of recovery to the net amount.** In the alternative, and without conceding that FTT was a Ponzi scheme, if the Trustee's "net winner" theory applies, the Trustee's recovery is limited to the amount by which payments to Defendant exceed the amounts Defendant paid to FTT over the entire relationship, because payments up to that amount satisfied Defendant's claims against FTT and were given for value. Defendant paid FTT $10,434.58. See Donell v. Kowell, 533 F.3d 762 (9th Cir. 2008); Perkins v. Haines, 661 F.3d 623 (11th Cir. 2011); Picard v. Greiff (In re Bernard L. Madoff Inv. Sec. LLC), 476 B.R. 715 (S.D.N.Y. 2012); Picard v. Katz, 462 B.R. 447 (S.D.N.Y. 2011).

**NINTH DEFENSE. No duplicate recovery.** The Trustee may plead alternative theories, but must establish the requirements of each theory on which he seeks relief. Any recovery is subject to the single-satisfaction limit in 11 U.S.C. § 550(d).

**TENTH DEFENSE. Sufficiency of fraud allegations (Fed. R. Civ. P. 9(b)).** Defendant preserves his objection under Fed. R. Civ. P. 9(b), made applicable by Fed. R. Bankr. P. 7009, to the sufficiency of the pleaded circumstances of the alleged fraudulent transfers. Defendant disputes the alleged fraudulent purpose of the payments and does not admit the allegations concerning FTT's internal operations.

**ELEVENTH DEFENSE. Interest of the debtor in property; proper estate.** The Trustee bears the burden of proving that each payment was a transfer of an interest of the debtor in property, of identifying the source account, and of identifying the estate on whose behalf each claim is asserted. Defendant lacks knowledge of the source account for each payout and demands strict proof.

**TWELFTH DEFENSE. Authority concerning the involuntary case.** The available docket for Case No. 24-22595 identifies Andrea Dobin as the interim trustee appointed on February 20, 2025. Defendant lacks knowledge or information sufficient to form a belief about any later order or appointment authorizing Plaintiff to assert avoidance claims through that case and therefore disputes such authority to the extent it is required for the relief sought. Defendant does not dispute Plaintiff's appointment as trustee in Case No. 25-10470.

**THIRTEENTH DEFENSE. Disputed basis for disallowance under 11 U.S.C. § 502(d).** Defendant disputes the alleged avoidance and recovery liability on which Count Six depends. Defendant requests denial of disallowance under § 502(d) unless the Trustee establishes its statutory requirements. Defendant filed Claim No. 313 for $120,000.00 on March 12, 2025, before the April 17, 2025 bar date. He did not file Claim No. 568, which Exhibit G identifies as another creditor's claim.

**FOURTEENTH DEFENSE. Interest, fees, and costs.** Defendant disputes the Trustee's entitlement to prejudgment interest and requests that any award be limited to the amount, rate, and period permitted by applicable law. Defendant disputes any award of attorney fees without an established legal basis. Any award of costs remains subject to Fed. R. Bankr. P. 7054 and applicable law.

**FIFTEENTH DEFENSE. Amendment.** Defendant may seek to amend this Answer if further information supports additional defenses, subject to Fed. R. Civ. P. 15, Fed. R. Bankr. P. 7015, and any applicable scheduling order.

## MEDIATION

Defendant will participate in the mandatory mediation required by the Amended Procedures Order entered June 30, 2026 in Case No. 25-10470 (ECF No. 233), if the proceeding is not resolved beforehand. Defendant requests participation by video conference as provided in paragraph 12 of that Order. Formal discovery remains stayed under paragraph 7, subject to the Order's provisions for voluntary exchanges and limited discovery.

## PRAYER FOR RELIEF

WHEREFORE, Defendant respectfully requests that the Court: (a) dismiss the Complaint with prejudice; (b) enter judgment in Defendant's favor on all counts; (c) in the alternative, limit any recovery to the amount, if any, by which payments to Defendant exceed the $10,434.58 Defendant paid to the Debtor over the entire relationship, satisfaction of antecedent debts being value under 11 U.S.C. § 548(d)(2)(A); (d) deny disallowance of Claim No. 313 under 11 U.S.C. § 502(d); (e) award Defendant his costs; and (f) grant such other and further relief as is just.

Dated: November 3, 2026

Respectfully submitted,

Nicholas Tommarello

5427 Ridgedale Avenue

Dallas, TX 75206

(949) 838-5010

nttradesllc@gmail.com

Defendant, pro se

## CERTIFICATE OF SERVICE

I, Nicholas Tommarello, certify that on November 3, 2026, I served a true and correct copy of the foregoing Answer, Affirmative Defenses, and Statement Regarding Consent, together with Exhibits A, B, C, D, and G, upon Mitchell J. Malzberg, Esq. (counsel for Plaintiff) by first-class mail and electronic mail, and upon John Michael McDonnell, Chapter 7 Trustee, 500 Hooper Avenue, Second Floor, Toms River, NJ 08753, by first-class mail, postage prepaid, as follows:

Mitchell J. Malzberg, Esq.

Law Offices of Mitchell J. Malzberg, LLC

P.O. Box 5122, 6 E. Main Street, Suite 7

Clinton, NJ 08809

mmalzberg@mjmalzberglaw.com

Attorney for Plaintiff John Michael McDonnell, Chapter 7 Trustee

Nicholas Tommarello, pro se

Dated: November 3, 2026

# EXHIBIT A

**Payments from Defendant to the Debtor.** Four wire confirmations from Defendant's Chase Bank accounts, transmitted via the Choicefin payment processor to "Fast Track Trading, Orlando FL 32819," totaling $10,434.58:

| Date | Amount | Account | Reference |
|---|---|---|---|
| 08/08/2024 | $2,515.80 | …9215 | Order 14278/Bnf/Nick Tommarello |
| 08/15/2024 | $2,096.50 | …9215 | Order No. 16677 |
| 08/30/2024 | $3,665.88 | …4975 | Ref: 30974 |
| 09/18/2024 | $2,156.40 | …4975 | Ref: 46320/Bnf/46320 |

Source documents (excerpts follow): Chase statement for the cycle ending 08/08/2024, account …9215 (August 8, 2024 wire); cycle ending 09/10/2024, account …9215 (August 15, 2024 wire); cycle ending 09/06/2024, account …4975 (August 30, 2024 wire); cycle ending 10/04/2024, account …4975 (September 18, 2024 wire). Each excerpt is the statement page carrying the wire entry; all other transactions, balances and full account numbers are redacted, and pages with no Fast Track Trading entry are omitted.

CHASE

July 10, 2024 through August 08, 2024
Account Number: [redacted]9215

## TRANSACTION DETAIL *(continued)*

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| [redacted] | | | |
| 08/08 | 08/08 Online Domestic Wire Transfer Via: Choicefln/091311229 A/C: Fast Track Trading Orlando FL 32819 US Ref: Order 14278/Bnf/Nick Tommarello Imad: 0808Mmqfmp2L012992 Trn: 3199454221Es | -2,515.80 | [redacted] |
| 08/08 | Online Domestic Wire Fee | -25.00 | [redacted] |

[redacted]

CHASE

August 09, 2024 through September 10, 2024
Account Number: [redacted]9215

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |
| 08/15 | 08/15 Online Domestic Wire Transfer Via: Choicefin/091311229 A/C: Fast Track Trading Orlando FL 32819 US Ref: For Nick Tommarello/Bnf/Order Number: 16677 Imad: 0815Mmqfmp2M015901 Trn: 3298644228Es | -2,096.50 | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| 08/15 | Online Domestic Wire Fee | -25.00 | [redacted] |

[redacted]

CHASE

August 07, 2024 through September 06, 2024
Account Number: [redacted]4975

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| [redacted] | | | |
| 08/30 | 08/30 Online Domestic Wire Transfer Via: Choicefin/091311229 A/C: Fast Track Trading Orlando FL 32819 US Ref: 30974 Imad: 0830Mmqfmp2K024777 Trn: 3634734243Es | -3,665.88 | [redacted] |
| 08/30 | Online Domestic Wire Fee | -25.00 | [redacted] |
| [redacted] | | | |

[redacted]

CHASE

[redacted]

September 07, 2024 through October 04, 2024

Account Number: [redacted]4975

[redacted]

NICHOLAS TOMMARELLO

[redacted]

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | [redacted] | | |
| 09/18 | 09/18 Online Domestic Wire Transfer Via: Choicefin/091311229 A/C: Fast Track Trading Orlando FL 32819 US Ref: 46320/Bnf/46320 Imad: 0918Mmqfmp2L020802 Trn: 3305234262Es | -2,156.40 | [redacted] |
| 09/18 | Online Domestic Wire Fee | -25.00 | [redacted] |
| | [redacted] | | |

# EXHIBIT B

**Payments from the Debtor to Defendant.** Two payouts transmitted to Defendant through the Rise payment platform by Fast Track Trading:

| Date | Amount | Source |
|---|---|---|
| 09/11/2024 | $18,500.00 | Rise payout, strieste@fasttracktrading.net (transaction hash recorded in export) |
| 10/16/2024 | $18,000.00 | Rise payout, strieste@fasttracktrading.net (transaction hash recorded in export) |

Source document: Rise transaction export (CSV), rows for the two payouts, including on-chain transaction hashes.

## EXHIBIT B. Rise transaction export (excerpt)

Full export: rise_export_20261024.csv, filtered to the two Fast Track Trading payouts.

| Date | Description | Amount |
|---|---|---|
| 2024/10/16 20:37:19 | Withdraw on ramp RisePayRampUSDUS to address 0x076C21D4eE309Bad764D227E469Ec8De88C1Ca4b on tx: 0xf1fd4f683f029a3eefddcb4845d5eaaaa044917aeec8fc6c1cb27871c9b3b642 | -18000.00 |
| 2024/10/16 20:21:06 | Paid from strieste@fasttracktrading.net riseid: 0x344B5330D8251e66723fd0DAA3eead06f0DfBfF7 on tx: 0x5e8fb10fd2205af747bdfbe2cacc2b0e43965f03b6e8a334618794e27834c1da | 18000.00 |
| 2024/09/11 22:34:24 | Withdraw on ramp RisePayRampUSDUS to address 0x076C21D4eE309Bad764D227E469Ec8De88C1Ca4b on tx: 0x4a2c1149541d34e7507117238a7689b0ebec4a4d7461cbee820036e58c64f36f | -18500.00 |
| 2024/09/11 22:33:34 | Paid from strieste@fasttracktrading.net riseid: 0x344B5330D8251e66723fd0DAA3eead06f0DfBfF7 on tx: 0x82b446d45f9a70cbe05e27aada52190729b5e10eeeaa9b0ec44ad21c30366f52 | 18500.00 |

# EXHIBIT C

**Proof of Claim No. 313.** Filed proof of Claim No. 313, submitted March 12, 2025 in Case No. 25-10470 (MBK) for $120,000.00. The attached three-page Official Form 410 is the claim as filed. Defendant describes its basis in the Answer as approved but unpaid payouts. Face amount verified against the Claims Register of Case No. 25-10470.

| Tab | Contents |
|---|---|
| C-1 | Filed-stamped copy of Proof of Claim No. 313 (Official Form 410, Claim 313-1, filed March 12, 2025, 3 pages) |

**Fill in this information to identify the case:**

Debtor 1 Fast Track Trading LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court **District of New Jersey**

Case number: 25-10470

FILED
U.S. Bankruptcy Court
District of New Jersey
3/12/2025
Jeanne Naughton, Clerk

Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Nick Tommarello
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor ______

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? ______

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Nick Tommarello<br>Name | Name |
| 5427 RIDGEDALE AVE<br>DALLAS, TX 75206 | |
| Contact phone 9498385010 | Contact phone |
| Contact email nttradesllc@gmail.com | Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one): ______

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? ______

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**
☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ________

**7. How much is the claim?** $ 120000.00

**Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as healthcare information.

Services Performed

**9. Is all or part of the claim secured?**
☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: ________

**Basis for perfection:** ________

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ ________

**Amount of the claim that is secured:** $ ________

**Amount of the claim that is unsecured:** $ ________ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ ________

**Annual Interest Rate** (when case was filed) ____ %

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**
☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ ________

**11. Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: ________

| | | |
|---|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No<br>☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 3/12/2025
MM / DD / YYYY

/s/ Nicholas Tommarello
Signature

Print the name of the person who is completing and signing this claim:

Name: Nicholas Tommarello
First name Middle name Last name

Title:

Company:
Identify the corporate servicer as the company if the authorized agent is a servicer

Address: 5427 RIDGEDALE AVE
Number Street
DALLAS, TX 75206
City State ZIP Code

Contact phone: Email:

# EXHIBIT D

**Fast Track Trading published terms.** Selected excerpts from FTT's Terms and Conditions captured by the Wayback Machine on September 25, 2024, and its published Payout Limits page captured on September 26, 2024 (www.fasttracktrading.net). These excerpts include the product-purchase language, the educational and simulated-trading disclosures, the no-refund provision, and the published payout limits and eligibility requirements.

## EXHIBIT D. FTT published terms (archived excerpts)

Source: Wayback Machine captures of www.fasttracktrading.net: Terms and Conditions (captured September 25, 2024) and Knowledge Base "Payout Limits" (captured September 26, 2024). Capture dates are the dates the pages were archived; they are not offered as the dates the terms took effect.

### 1. Terms and Conditions (captured September 25, 2024): selected clauses

By Clicking Agree, you are purchasing a product, which results in a binding agreement between user and Company.

Billing User understands there are NO REFUNDS If user cancels accidentally or intentionally, user understands it is impossible to reactivate the account for any reason.

Repeated abuse of this shall result in termination of the account with no refund or payout.

Risk capital is money that can be lost without jeopardizing ones' financial security or life style. Only risk capital should be used for trading and only those with sufficient risk capital should consider trading.

All warranties of any kind, express or implied, including but not limited to the implied warranties of merchantability, fitness for a particular purpose, freedom from contamination by computer viruses, and non-infringement of proprietary rights, are disclaimed by Fast Track Trading hereinafter referred to as COMPANY and all of its services are purely for educational purposes.

COMPANY is acting SOLELY as an education firm providing research tools and any trading done is for the sole and explicit purpose of illustrating the mechanics of a trade as an example for purely educational purposes.

COMPANY adamantly states that nothing in any of its software, tools, websites, webinars and other communication method constitutes a solicitation, promotion, endorsement, offer, or recommendation to buy or sell any investment vehicle.

Education examples of strategies, trade examples, and hypothetical trades do not represent liquidity, exchange fees, commissions, interest, dividends, spreads, or other expenses and have the benefit of hindsight.

CFTC Rule 4.41: Hypothetical or Simulated performance results have certain limitations. Unlike an actual performance record, simulated results do not represent actual trading. Also, because the trades have not actually been executed, the results may have under-or-over compensated for the impact, if any, of certain market factors, such as lack of liquidity. Simulated trading programs, in general, are also subject to the fact that they are designed with the benefit of hindsight.

### 2. Published payout limits by account type (Knowledge Base "Payout Limits," captured September 26, 2024)

| Account type (starting balance) | 5-Day payout cap (first payout only) | 10-Day payout cap | Extended cap (after 8 payouts) |
|---|---|---|---|
| Rally ($25,000) | Up to $1,000 | Up to $1,500 | Up to $3,000 |
| Daytona ($50,000) | Up to $1,250 | Up to $2,000 | Up to $4,000 |
| GT ($150,000) | Up to $1,500 | Up to $3,000 | Up to $6,000 |
| LeMans ($300,000) | Up to $2,000 | Up to $4,000 | Up to $8,000 |

Additional published terms: "After 12 payouts, traders can request any amount they want, even if they are not yet on a live account." The 5-day payout is available only for the first payout on the first account. Profit target: at least 5% of the starting account balance before requesting a payout; 5% daily buffer thereafter; consistency rule: no single trading day's profit exceeding 20% of total profits.

# EXHIBIT G

**Proof of Claim No. 568 as filed (claims register of Case No. 25-10470).**

Complaint ¶ 39 attributes Proof of Claim No. 568 ($580.40) to Defendant. The claims register of Case No. 25-10470 lists Claim No. 568 under Ba Thien Huynh, a Fast Track Trading customer in Edmonton, Alberta, filed July 17, 2025, in the amount of $580.40, described by the filer as refunds for "2GT account 419.30 USD + 2 rally account 161.10USD."

Attached: page 1 of the filed-stamped Official Form 410, Claim No. 568-1, identifying the creditor. Source: claims register of Case No. 25-10470 (MBK), PACER, October 30, 2026.

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Fast Track Trading LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court | District of New Jersey |
| Case number: | 25-10470 |

FILED
U.S. Bankruptcy Court
District of New Jersey
7/17/2025
Jeanne Naughton, Clerk

# Official Form 410
# Proof of Claim

04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Ba Thien Huynh

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor ______

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? ______

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Name: Ba Thien Huynh | Name: |
| 475 ormsby road west NW<br>10/7 Nguy n T t Th nhPh ng 2, Tuy<br>Edmonton, AB T5T 6G9 | |
| Contact phone 7807071269 | Contact phone |
| Contact email bth@ualberta.ca | Contact email |

Uniform claim identifier (if you use one): ______

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? ______